The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Edward Garner Jr., and the briefs and arguments on appeal. The appealing party has shown good ground to reconsider the evidence. Having reconsidered the evidence of record, the Full Commission reverses the Deputy Commissioners holding and enters the following Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing on 24 June 1998 as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer.
3. Plaintiffs average weekly wage is as set forth on the Form 22 (Wage Chart).
4. Plaintiff is alleging an injury by accident or a specific traumatic incident that occurred on 12 March 1997, resulting in an injury to her neck.
5. Defendants have denied liability.
6. The issues before the Commission are: whether plaintiff sustained an injury by accident or a specific traumatic incident; whether proper notice was given by plaintiff, and; to what benefits, if any, is plaintiff entitled to receive.
***********
Based upon the entire record of evidence, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner on 24 June 1998, plaintiff was 52 years old. Plaintiff has completed four years of college, receiving her degree in biology, and subsequently earned a two year nursing degree.
2. Plaintiff began work for defendant-employer on 14 June 1976 as a registered nurse and continued working in that capacity until 20 July 1998. Plaintiff last worked for defendant-employer in its maternity unit, where she served approximately twelve (12) years. As a nurse, plaintiff assisted doctors with child deliveries, Cesarean sections, tubal ligations and hysterectomies. As part of her work, plaintiff had been trained in performing the McDonalds procedure, which is a technique for child delivery involving application of pressure directly to the mothers symphysis pubis.
3. In 1992, plaintiff began working as a charge nurse in addition to her regular duties for defendant-employer as a staff nurse. Plaintiff worked as a charge nurse once every week. As the charge nurse, plaintiff supervised the nursing staff during her shift.
4. Plaintiffs duties as a charge nurse included receiving reports of work related injuries and making certain that incident reports were completed as part of defendant-employers procedures for work place injuries. These procedures require employees who are injured to report the occurrence and to complete an incident report, and are maintained in a manual which is accessible to all employees. The fact that plaintiff had dealt with incident reports prior to 12 March 1997 is not determinative as to whether the delay in her giving written notice to defendants of her injury is reasonably excused.
5. On 12 March 1997, plaintiff was assisting with a patient who was experiencing difficulty in her delivery. After a period with the patient in labor, Dr. Eileen Sales, the treating obstetrician, performed a vacuum extraction, which involves attaching a suction cup to the babys head and pulling them along the birth canal. With the use of this procedure, the babys head was delivered, but the shoulders became stuck. This presented an emergency situation in that the baby was asphyxiating. At this point, Dr. Sales instructed plaintiff to perform the McDonalds procedure which involved pushing on the mothers symphysis pubis, where the babys shoulders were stuck. As plaintiff was pushing with her arms extended and in a thrusting manner, she felt a pull in her right shoulder, but continued with the procedure and delivery.
6. The delivery plaintiff assisted with on 12 March 1997 was a particularly difficult one and involved a severe instance of the baby being stuck at the shoulders. Furthermore, although plaintiff had performed the McDonalds procedure previously, it normally does not include the use of a thrusting motion.
7. Throughout the remainder of her shift on 12 March 1997, plaintiff continued to experience pain in her shoulder. The following morning, Dr. Sales observed plaintiff to be in discomfort and inquired as to her condition. Plaintiff informed Dr. Sales that she believed she had pulled a muscle during the delivery the prior day. At that time, plaintiff believed that the pain would resolve and did not suspect that the problem was serious. Plaintiff did not report the incident immediately to her direct supervisor, Montrice Chapman, who was working with plaintiff with the delivery on the date in question, again because she did not believe it to be serious at that time.
8. The Full Commission finds that plaintiffs testimony regarding the incident involving the delivery on 12 March 1997 to be credible.
9. Subsequently, plaintiff continued to work while experiencing pain in her shoulder through 14 April 1997. On that date, plaintiff was examined at the office of her family physician and was informed that her condition was degenerative and was due to aging. With this information, plaintiff still had no reason to believe that her condition was serious.
10. With her condition not improving after taking medication and undergoing physical therapy, plaintiff was referred to Dr. Steve Gudeman, a neurosurgeon. Dr. Gudemans records indicate that plaintiff reported a work place injury and that she had been involved in a particularly difficult delivery. Following an MRI ordered by Dr. Gudeman, he diagnosed plaintiff with cervical degenerative disc disease at C5-6, with spondylosis causing foraminal encroachment and recommended surgery. It was not until receiving this diagnosis that plaintiff knew the extent and seriousness of her injury. She then immediately reported it to her supervisor and completed a written incident report on 17 June 1997.
11. Following plaintiffs ultimate diagnosis, Dr. Sales wrote counsel for plaintiff a letter on 19 December 1997, at plaintiffs request, which documented and corroborated her recollection of the events in the delivery room on 12 March 1997.
12. On 2 July 1997, Dr. Gudeman performed a cervical fusion surgery on plaintiff. As the result of her condition and surgery, plaintiff was unable to work in any capacity from 30 May 1997 to 25 August 1997 when she was released to return to light duty work. Despite her restrictions, defendant-employer returned plaintiff to her pre-injury, heavy duty job. After her shift, plaintiff knew that she was unable to perform her duties and Dr. Gudeman again removed her from work.
13. Dr. Gudeman opined that plaintiffs degenerative disc disease was aggravated by any trauma she experienced on 12 March 1997. Dr. Gudeman further opined that because plaintiff had been asymptomatic prior to any traumatic incident occurring on 12 March 1997, that any flare ups or ongoing symptoms would be causally related to that incident.
14. Plaintiff again attempted to return to her full duties on 22 September 1997. After a shift in which plaintiff experienced a setback involving the lifting of a patient, plaintiff was assigned part-time duties. Plaintiff worked in a part-time position for defendant-employer from 17 October 1997 to 13 April 1998 when she returned to full-time duties and full wages.
15. On 2 April 1998, Dr. Gudeman released plaintiff with a five percent (5%) permanent partial disability rating to her back.
16. Plaintiffs failure to provide defendant with written notice of her work related injury and claim for compensation pursuant to the terms of G.S. 97-22 is reasonably excused given that she did not immediately know the severity of her injury. Once plaintiff had knowledge of the seriousness of her condition, she promptly notified her employer and filed a written report. Furthermore, plaintiffs delay in providing written notification of her injury in no way prejudiced defendants in either the investigation of the claim, in that all witnesses to the incident were readily available, or with the ability to provide medical treatment given that appropriate treatment was immediately provided when plaintiffs condition was correctly diagnosed.
17. The incident occurring on 12 March 1997 involved the introduction of unusual circumstances in plaintiffs work routine and constituted an injury by accident arising out of and in the course of her employment with defendant-employer.
18. In the alternative, on 12 March 1997 plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer in the form of a specific traumatic of the work assigned.
19. As the result of her 12 March 1997 injury by accident, plaintiff was unable to earn wages in her former position with defendant-employer or in any other employment for the periods of 30 May 1997 through 24 August 1997 and from 26 August 1997 to 22 September 1997. Plaintiff worked one full day during this period on 25 August 1997.
20. As the result of her 12 March 1997 injury by accident, plaintiff was only capable of earning reduced wages for the period of 17 October 1997 to 13 April 1998.
21. As the result of her 12 March 1997 injury by accident, plaintiff sustained a five percent (5%) permanent partial disability rating to her back.
22. Defendants paid plaintiff short term disability for eight (8) weeks and one (1) day.
23. Although the parties stipulated that plaintiffs average weekly wage would be determined by an Industrial Commission Form 22 Wage Chart, the data on the form submitted is inconsistent with other evidence relating to plaintiffs wages and is not accepted as an indication of her true wage earnings.
***********
Based on the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 12 March 1997, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer. G.S. 97-2(6).
2. In the alternative, on 12 March 1997, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer in the form of a specific traumatic incident of the work assigned. Id.
3. Plaintiffs claim is not barred given that the delay in her giving written notification to defendants of her injury on 12 March 1997 was reasonably excused and that defendants were in no way prejudiced by this delay. G.S. 97-22.
4. There is insufficient credible evidence in the record at this time upon which to determine plaintiffs average weekly wage as of 12 March 1997. G.S. 97-2(5).
5. As the result of her 12 March 1997 injury by accident, plaintiff is entitled to be paid by defendants temporary total disability compensation at a weekly rate to be determined for the periods of 30 May 1997 through 24 August 1997 and from 26 August 1997 to 22 September 1997. G.S. 97-29. Plaintiff worked one full day during this period on 25 August 1997. Id.
6. As the result of her 12 March 1997 injury by accident, plaintiff is entitled to an election of remedies between being paid by defendant temporary partial disability compensation at the weekly rate of two-thirds (2/3) the difference between her average weekly wage at the time of injury and the reduced wages she was able to earn for the period of 17 October 1997 to 13 April 1998 or permanent partial disability compensation at a weekly rate to be determined for fifteen (15) weeks for the five percent (5%) disability rating to her back. G.S. 97-30; G.S. 97-31(23).
7. As the result of her 12 March 1997 injury by accident, plaintiff is entitled to have defendants pay for all medical expenses incurred. G.S. 97-25.
8. Defendants are entitled to a credit for eight (8) weeks and one (1) day of the short-term disability benefits paid to plaintiff. G.S. 97-42.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary total disability compensation at a weekly rate to be determined for the period of 30 May 1997 through 24 August 1997 and from 26 August 1997 to 22 September 1997. Plaintiff worked one full day during this period on 25 August 1997. Having accrued, this compensation shall be paid to plaintiff in a lump sum. This compensation is subject to the credit in defendants favor and the attorneys fee approved herein.
2. Once plaintiff has made her election of benefits, defendants shall pay to her either temporary partial disability compensation at the weekly rate of two-thirds (2/3) the difference between her average weekly wage at the time of injury and the reduced wages she was able to earn for the period of 17 October 1997 to 13 April 1998 or permanent partial disability compensation at a weekly rate to be determined for fifteen (15) weeks for the five percent (5%) disability rating to her back. Having accrued, this compensation selected shall be paid to plaintiff in a lump sum. This compensation is subject to the credit in defendants favor and the attorneys fee approved herein.
3. Defendants shall pay for all medical expenses incurred by plaintiff as the result of her 12 March 1997 injury by accident.
4. Defendants are entitled to a credit for eight (8) weeks and one (1) day of the short-term disability benefits paid to plaintiff.
5. A reasonable attorneys fee in the amount of twenty-five percent (25%) of the compensation awarded herein is approved for counsel for plaintiff. From the compensation having accrued, this fee shall be deducted from the amounts owed to plaintiff and paid directly to counsel for plaintiff.
6. Defendant-employers shall pay the costs, including an expert witness fee of $300.00 to Dr. Sales.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
The parties are hereby ORDERED to reach an agreement regarding plaintiffs average weekly wage and to submit this to the Full Commission which retains jurisdiction over this matter pending the entry of a final Opinion and Award. The parties shall have THIRTY DAYS from receipt of this Opinion and Award within which to submit this information.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
S/_______________ DIANNE C. SELLERS COMMISSIONER